LAW OFFICES OF

# LAWRENCE M. FISHER

233 BROADWAY -- suite 2348
NEW YORK, NEW YORK 10279

TELEPHONE (212) 226-5700
FACSIMILE (212) 226-3224
EMAIL: Fishercrimlaw@gmail.com

**VIA ECF**                                          March 12, 2015

Honorable Allyne R. Ross
Senior United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  111201

Re: _United States of America v. Jerome Asaro_
_14-CR-26 (ARR)_

Dear Judge Ross:

I submit this letter on behalf of Mr. Jerome Asaro, the defendant in the above matter, who is scheduled to be sentenced by Your Honor on March 26, 2015 at 11:00 a.m. following his conviction by plea of guilty to a violation of 18 U.S.C. 1962(d), the federal RICO statute. At the time of his guilty plea before Your Honor, and pursuant to a written plea agreement with the government, Mr. Jerome Asaro allocuted to having participated in a RICO enterprise through his commission of two racketeering acts, accessory after the fact to murder and arson conspiracy and arson, respectively, racketeering acts 1 and 2A & 2B of Count One of the superseding information.

Below, Mr. Jerome Asaro respectfully notes his objections to the Presentence Investigation Report ("PSR") prepared by the Department of Probation, sets forth the "correct" advisory sentencing guidelines analysis applicable at bar, discusses the global settlement, his personal characteristics and the statutory factors enumerated in 18 U.S.C.§3553(a). Various letters from family and friends are also submitted for the Court's consideration. After reviewing this letter, we ask that the Court impose a non-guidelines sentence below the advisory guideline range which we submit is both fair and just and complies with the statutory factors enumerated in 18 U.S.C. § 3553(a) and the Supreme Court's decision in Gall v. United States, -U.S.-, 128 S.Ct. 586, (2007). We submit that such a sentence is more than sufficient, but not greater than necessary, to accomplish the objectives of sentencing.

1

## 1. Objections to the PSR

### (a) Objection to Alleged Relevant Conduct

In Mr. Jerome Asaro's PSR, the Probation Department includes, in the body of the report under the headings "Offense Conduct" (PSR ¶ 5-14) and "The Defendants' Participation" (PSR ¶ 14-18), as well as in its proposed sentencing guidelines analysis (PSR ¶ 19-22), certain conduct for which Mr. Jerome Asaro had been charged by the government in its indictment, but for which he did not plead guilty and has not been convicted. Nor did he allocute or otherwise admit that he had any involvement in any act other than the conduct to which he pled. Moreover, contrary to the assertions of Probation in ¶ 53 of the PSR, the government advised me that it did ***not*** represent that it is prepared to prove any racketeering conduct to which Mr. Jerome Asaro did not plead.

The inclusion of this information in the PSR stands in stark contrast to the plea agreement entered into after extensive negotiations between Mr. Jerome Asaro and the government, and upon which Mr. Jerome Asaro relied in deciding to enter his guilty plea, in which the government agreed to an advisory sentencing guidelines calculation based solely upon the crimes for which Mr. Jerome Asaro would plead guilty.

Since the time of the preparation of the PSR, the government has advised me that with respect to relevant conduct to which the defendant in question did not plead guilty, the government "elects" not to offer proof of that conduct. According to the government, they take this position consistent with their plea agreement with the defendant, and for strategic reasons, including the desire not to expose cooperating witnesses and evidence at this time. Consistent with this practice, the government has advised me that they will take the same position with respect to the co-defendants as well. Accordingly, Mr. Jerome Asaro objects to the PSR's reference in the above paragraphs to offense conduct for which he has not been convicted and asks that the Court strike such references from the PSR.

As a result of the non-consideration of this alleged conduct in determining the advisory guidelines applicable at bar, the Court must also adjust the offense level calculations employed by the Probation Department. This issue is dealt with below.

### (b) Objection to Failure to Apply a Downward Adjustment or Departure or to Propose a Non-Guidelines' Reduction for the "Global Plea"

As Your Honor is aware, the nature and scope of the charges in the instant indictment were extremely complex and entailed an enormous amount of discovery. The charges were diverse and spanned over thirty years.

Nevertheless, four of the five defendants eventually pled guilty to various offenses. The four defendants, including Mr. Jerome Asaro, did so under the terms of a "global" settlement agreement with the government. This agreement was the product of a collective effort between and among the parties to obtain a result that, while not perfect, ensures each defendant's conviction for the most serious charge that they faced while saving the taxpayers the enormous sums of money that would have been necessary for all of these defendants to be tried.

This global disposition came about through hard work and many hours of discussion. During the months that followed the arraignment, both defense and government attorneys worked diligently to bring about a settlement for the entire case. This was no small undertaking requiring concessions on both sides, given not only the complexity of the case but also the individual characteristics of each of the individuals charged. Nor were these the only factors that complicated the plea negotiations.

Mr. Jerome Asaro, for example, as part of his agreement with the government, stipulated to the guidelines set forth in the plea agreement. In exchange Mr. Jerome Asaro and his co-defendants were assured that the government would advance to the Court that he was entitled to a one-point reduction for the global disposition in this case.

Neither the parties' agreement to such a reduction of sentence under these unusual circumstances, nor acceptance of this stipulation by the courts of this district, is in any way unusual. Courts in this District regularly grant global adjustments, thereby encouraging parties to negotiate "global" settlements of cases involving numerous defendants. By resolving the complex legal and factual issues that invariably arise in such cases, this process advances the goal of ensuring that multi-defendant cases can be processed in a fair and efficient manner. See, e.g., United States v. Garcia, 926 F.2d 125 (2d Cir. 1991); United States v. Agate, 08 Cr. 76 (JBW)(approving of a three-level reduction for defendants in multi-defendant case); United States v. Cannistraci, 05 Cr. 842 (ARR)(approving of a two-point reduction for participation in a multi-defendant disposition); United States v. Abramor, 04 Cr. 1041 (SLT)(awarding a two-point global reduction in multi-defendant RICO prosecution); United States v. Baudanza, 06 Cr. 181 (RJD) (approving a one-point global reduction as set forth in plea agreement).

Clearly, before the government agrees to make a joint request for a global downward departure, they conduct a comprehensive review of the facts and circumstances of a given case to ensure that such departure is appropriate. Such is the case here.

With the extraordinary number of multi-defendant indictments filed in this District, it comes as no surprise that judges in this District have historically encouraged this process. Lawyers regularly appearing in this District have come

3

to rely upon this history and thus have encouraged their clients to participate in the process. Without the District wide acceptance of this part of the plea bargaining process, a needless backlog would be the likely result, as fewer defendants would be willing to plead guilty.

In this case, starting in October, 2014, the defendants entered into timely guilty pleas before Your Honor. During each and every proceeding, Your Honor carefully explained to each defendant the rights that he would be waiving and the terms and conditions of the plea agreement with the government. This explanation included the government's agreement to request a global downward departure as reflected in the written plea agreements.

The resolution of this case was the result of the combined efforts of all of the parties. Given all of the facts of this case, including the global nature of the plea process that resulted in not only the disposition of almost the entire case, but also significant savings of time and money, it is respectfully advanced that a one-point global reduction as forth in Mr. Jerome Asaro's written plea agreement with the government is entirely appropriate. Mr. Asaro has no objection if the Court finds that the one-point reduction for global diposition is more appropriately imposed as a non-guidelines variance, rather than as a guidelines adjustment or departure.

### (c) Objection to the defendant's participation and alleged role in the offense

It is submitted that the issue of role enhancement was discussed many times by the government and defense counsel prior to entering into the plea agreement in this case. Both defense counsel and the government agreed in the negotiated plea agreement that a two-point minor role reduction pursuant to U.S.S.G. §3B1.2(b) was appropriate. This two-point minor role adjustment reflected the government's view that the adjustment was warranted given the specific facts of the charges that the defendant pled guilty to and the defendant's lack of status at 22 years old in 1980 and age 26 years old in 1984.

However, the PSR adds a three-level role enhancement by asserting that "the defendant was a manager or supervisor (but not an organizer or leader) and that the criminal activity involved five or more participants or was otherwise extensive." The PSR's misapplication of the adjustment for role in the offense is based on its erroneous factual premises and its consideration of conduct for which the defendant did not plead guilty. The government has repeatedly indicated that it stands by and is relying on the plea agreement and will seek a minor role reduction of two-points under §3B1.2(b). The government's position is clear that it will not seek to prove any enhancement that is not contained within the four corners of the plea agreement.

For these reasons, it is respectfully requested that this Court honor the negotiated plea agreement and strike the three-point enhancement contained in ¶ 57 and ¶ 63 of the PSR.

4

**(d) Objection to the criminal history computation and category**

The defendant objects to the criminal history point computation and to the corresponding criminal history category contained in the PSR because it is predicated on a consideration of "relevant conduct."

In the PSR, the Probation Department includes, in Part B of the report entitled "Defendant's Criminal History" under the headings "Adult Criminal Convictions" (PSR ¶ 96-101) and "Criminal History Computation" (PSR ¶ 102-104), certain sentences which occurred *after* the date of the instant offense and which would only apply if the court considered the "relevant conduct." As stated in greater depth herein in section a) entitled " objection to alleged relevant conduct" of this letter, we believe this Court should not consider the relevant conduct for which the defendant  did not plead guilty and has not been convicted. If the Court does not consider the relevant conduct, then it must only consider the sentences that occurred *prior* to the instant offenses to which the defendant pled guilty.

Pursuant to the superseding information filed with the court and to which Mr. Jerome Asaro pled guilty, it is clear that Count One, racketeering conspiracy, refers to two acts that were committed during the period of time between January 1, 1968 and December 31,1987. Specifically, the defendant pled guilty to committing these two acts, accessory after the act to murder committed between 1984 and 1986 and arson conspiracy and arson committed between 1980 and 1981. Therefore, in computing the correct amount of criminal history points applicable, any sentences that occurred *after* 1987 should not be counted.

Nonetheless, the PSR, at ¶ 100 and 101, erroneously adds one point for a 1989 misdemeanor conviction for criminal possession of stolen property 5th degree with a sentence of a conditional discharge and three points for a 2008 conviction for racketeering with  a sentence of  30 months jail and three years supervised release. Combined, these two sentences improperly add a total of four criminal history points to Mr. Jerome Asaro's criminal history category.

In addition to the these four criminal history points, the report goes on at ¶ 103  to erroneously add two more points because "the defendant committed the *instant offense* while he was under a term of supervised release" pursuant to §4A1.1(d) for a total of six criminal history points. However, as stated above, the defendant committed the instant offenses to which he pled guilty between 1980 and 1981 and between 1984 and 1986. During these years, Mr. Jerome Asaro was *not* on supervised release. Rather, the supervised release referred to by Probation occurred from 2010 to 2013 and stemmed from a 2008 sentence (see ¶ 101). Therefore, these six points were incorrectly included and should not be counted. The 1989, 2008 and supervised release sentences have the effect of unfairly elevating Mr. Jerome Asaro's criminal history category six points higher.

5

We submit that the PSR's criminal history calculations in this case are in error, and yield a sentence far greater than necessary to achieve the purposes of sentencing and should not be followed.

The correct and appropriate criminal history points for Mr. Jerome Asaro are a total of five points comprised as follows: one point for a 1977 misdemeanor conviction for attempted petit larceny with a sentence of a $250 fine; two points for a 1982 misdemeanor conviction for attempted arson 4th degree with a sentence of 60 days jail and three years probation; and two points for committing the instant offense while under a criminal justice sentence of three years probation for the 1982 sentence pursuant to § 4A1.1(d).

At the above calculated criminal history score of five points, the resulting criminal history category is level III with a guideline imprisonment range of 63-78 months. We submit that this is the correct and appropriate criminal history calculation.

## 2. The Correct Advisory Sentencing Guidelines Analysis

The written plea agreement reached between the government and the defendant accurately sets forth the appropriate advisory guidelines calculations for Mr. Jerome Asaro.

On October 10, 2014, the government entered into a written plea agreement with Mr. Jerome Asaro wherein in return for his guilty plea to Count One of the information charging a violation of 18 U.S.C. §1962(d), including Racketeering Act 1 (Accessory After the Fact to Murder 1984-1986) and Racketeering Act 2A&B (Arson Conspiracy and Arson 1980-1981) the government estimated a total offense level of 30.

After applying a two-point *minor role* reduction to the total offense level of 30, Mr. Jerome Asaro's adjusted offense level is 28. Based on a three-level *acceptance of responsibility* downward adjustment, Mr. Jerome Asaro's advisory guidelines range is reduced to a level 25. Finally, based upon the *global disposition* reached, as discussed above, Mr. Jerome Asaro is entitled to a reduction of his sentence by an additional one-point. Thus, the plea agreement provides for a total adjusted guidelines level of 24 for Mr. Jerome Asaro.

The written plea agreement was predicated on the following Guidelines calculation:

| | |
|---|---|
| Base Offense Level | 30 |
| Less: Minor Role §3B1.2(b) | -2 |
| Less: Acceptance of Responsibility §3B1.1(a)&(b) | -3 |
| Less: Global Disposition §5K2.0 | -1 |
| Total Adjusted Offense Level | 24 |

6

We ask the Court to rely on and honor these terms contained in the plea agreement.

As discussed above, the PSR references in its guidelines' analysis certain offense conduct for which Mr. Jerome Asaro did not plead guilty and has not been convicted. The government does not seek inclusion of this conduct in the guidelines' analysis and has represented that they will not offer evidence to do so. Thus, ¶s 66 through 89 of the PSR should be struck and ¶ 86 of the PSR should be amended to reflect that the total number of "units" as referred to in U.S.S.G. § 3D1.4 is reduced to 1.

### 3. <u>Mr. Jerome Asaro's Personal Characteristics and the Statutory Factors (18 U.S.C. §3553).</u> [1]

---

[1] Section 3553 provides, in pertinent part;

Imposition of a sentence

(a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
  (2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
  (3) the kinds of sentences available;
  (4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
      (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28; and
      (ii) that, except as provided in section 3742(g) [18 USCS § 3742(g)], are in effect on the date the defendant is sentenced; or
    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
  (5) any pertinent policy statement--
    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
    (B) that, except as provided in section 3742(g) [18 USCS § 3742(g)], is in effect on the date the defendant is sentenced.
  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have

Mr. Asaro's personal history includes characteristics that support this Court sentencing him to a sentence that is sufficient but not greater than necessary to comply with the statutory factors enumerated in 18 U.S.C. § 3553(a).

Jerome "Jerry" Asaro was born on March 30, 1958 in Queens, New York. He has two siblings and was reared by his parents, Theresa and Vincent Asaro, in Queens. His mother is 77 years old and is a retired bookkeeper. She currently suffers from macular degeneration causing her to be ¾ blind as well as from high blood pressure and chronic hepatitis C. She has also endured two painful knee replacements after having fallen down the stairs on three occasions. Jerry's father is 79 years old and underwent triple bypass heart surgery in 2013. He recently had an operation to remove kidney stones and his prostate. Currently, he is suffering from high blood pressure, chronic hepatitis C and shoulder pain. Mr. Asaro's parents divorced in 2005. Jerry continues to maintain a very close relationship with his mother and his sisters. Jerry's mother describes him in her letter to the Court as a "hard working" "magnificent wonderful loving son" and that she is "proud to be his mother". The PSR goes on to quote his mother as describing Jerry as "very family oriented" and always very good to his children."

Jerry was raised in a very close family environment. From this upbringing, Jerry learned to care for and to respect his family members. He grew up looking after and caring for others. He is a man defined by his sense of selflessness, his love for his family and friends and his hard work ethic.

Jerry's sister, Noreen, age 55, lives in Franklin Square, Long Island with her two children and works at a hospital. Noreen maintains a close relationship with her brother whom she describes in her letter as "always being there for me and my children." Noreen describes her brother Jerry as a "kind, loving son, brother, uncle, father and grandfather." Mr. Asaro's other sister, Dawn, age 51, lives in Manorville, Long Island and works at a school. Dawn is married and has one child who was born borderline autistic. She also remains fully supportive of her brother whom she describes in her letter as "more like a father to me than a brother" who "guided me and helped shape me into the woman I am today."

Jerry and his former wife, Susan Pirone, were married for 19 years until their divorce in 1999 due to her extramarital affair. Mr. Asaro had three children with his former wife: Bridget Asaro, a 32 year old married mother of one daughter who is currently pregnant with a second child; Amanda Asaro, a single, 29 year old nursing student who works as a receptionist at a doctor's office; and Gia Asaro, a 24 year old college senior who works for an insurance company. Jerry

---

been found guilty of similar conduct; and
    (7) the need to provide restitution to any victims of the offense.

continues to maintain a close relationship with all of his daughters and has remained a integral and constant part of his kids lives.

In her letter to the Court, Bridget writes about her father, Jerry, as follows:

> "I have been lucky enough to be blessed with such a wonderful man who I have the privilege of calling my Dad. It is hard to put into a short letter what this man means to me and our family. He is my father and my best friend. It is not often that I hear people refer to their father as their best friend, but in my case it is 100% true. He is someone I look up to, look to for advice or encouragement or even call just to catch up on the latest gossip with... My Dad is and has always been nothing but a kind, loving and most of all hardworking man."

Jerome Asaro met Dina Prudenti in 1997 and the two were married on June 25, 1999 in Queens. Dina is presently employed as a therapeutic horse riding instructor at Camp Horseability in Melville, N.Y. They reside together with their two children, Brittany, age 19, and Sarah, age 14, in Bethpage, Long Island. Since birth, Sarah has suffered from chronic breathing problems. Recently, Sarah underwent surgery to remove cysts that had grown on her ovaries. Brittany, Dina's child from a prior relationship, was legally adopted by Mr. Asaro in 2007.

Dina, has a significant medical history which includes, heart arrhythmia, herniated discs, shingles, gerd, allergic rhinitis, and severe anxiety disorder. In 2002, Dina had a car accident in which she ruptured a vertebrae. In 2003, Dina was hospitalized and underwent surgery consisting of a cardiac ablation. In 2007, Dina had reconstructive surgery on her right ankle. She is currently taking several proscribed medications including Effexor XR, Xanax, Zyrtec, Sotolol and Vicoden. Throughout these episodes she informs, Jerry has been at her side to comfort and to attend to her needs. In her letter, Dina states that Jerry "has devoted his life to his family; we meant everything to him and he meant everything to us."

Dina makes it clear that her husband is very involved in his children's lives and makes them his top priority. There is no question but that Mr. Asaro has always taken his fatherhood and parental responsibilities seriously and has been a constant positive presence in the lives of his children. While the current circumstances will certainly have an adverse affect on his ability to remain close with his children, he fully intends to do all he can to resume fulfilling his responsibilities to his family.

Jerry attended the St. Fortunata Catholic School from kindergarten through the eighth grade. He attended Christ the King High School in Queens from ninth through twelfth grade and was graduated in 1976 with his high school diploma.

Jerry is in good health except for acid reflux disease which he treats with Prilosec as proscribed by his doctor, Dr. Howard Zimmerman. In addition, Mr. Asaro has had a nagging rotator cuff problem (aka shoulder impingement) since March, 2007 for which he was receiving physical therapy at Ortho Fitness in Hicksville, N.Y. and for which he had been proscribed Naprosen by Dr. Arthur Thompson of Bethpage, N.Y. Presently, he continues to experience problems with his shoulder causing him occasional pain and discomfort. For the past twenty years, Jerry has experienced back spasms on and off. He is currently prescribed and takes the following medications: Naproxen (a pain reliever), Omeprazole (for acid reflux) and Rantidine (to treat and prevent ulcers). He has no history of drug or alcohol abuse.

Mr. Asaro has had a constant and productive employment history throughout his adult life. Since September 2005, Mr. Asaro has been employed as the yard manager/dispatcher for Inwood Material Terminal, a cement company located in Inwood, N.Y. Yesterday, I spoke to the company officials who confirmed that Jerry was punctual, reliable, and never missed any days from work. They went on to say that Jerry was a valuable and trusted empoyee who is missed. Contrary to the PSR, the three people who answer the phones at Inwood informed that they had not been contacted by the Probation Department. Similarly, the company officials said they had not been contacted by Probation and did not say that they "would not re-employ" Jerry. Notably, the Probation Department does not state the name of the person that they purportedly spoke to.

Prior to the above job, from March 2001 until 2005, Mr. Asaro was a construction worker at DeFoe Construction located in Mt. Vernon, N.Y. He was considered a very good worker whose attendance, ability and reliability were all called "excellent." Before DeFoe, for many years, Mr. Asaro operated Astro Fence located in Ozone Park, N.Y.  He closed his fence company due to shrinking profits.

Mr. Asaro's jobs prior to 1981 included working for Chimento Brothers in Maspeth, Queens loading and unloading freight, working delivering duty-free products to airports, and working as a store clerk at the Krutick Pharmacy in Brooklyn, N.Y. from the ages of 14 to 18 years old.

Mr. Asaro is clearly a capable and intelligent man. He has a strong family and work ethic. He has always supported his five children as a provider and as a father.

The PSR reports in ¶ 119 that since Jerry's incarceration for the present offense on January 24, 2013, he has incurred no disciplinary infractions whatsoever. Additionally, during his prior term of incarceration from 2008 to 2010, Jerry incurred no disciplinary infractions whatsoever. See, PSR ¶ 101. Moreover, Jerry successfully completed the following educational courses: decision-making, risk and responsibility, property/mail, banking, diversity awareness, job search, job interview, resume, success stories, release issues, halfway house issues, community correction information, united states probation issues, morning calisthenics, spinning/wellness and HIV information. Upon his release from jail on supervised release, the supervising probation officer reported that Jerry was complaint with all of his release conditions with one exception. On May 20, 2011 during his daughter's wedding reception, unbeknownst to Jerry, two individuals who were not on the guest list showed up and crashed the party resulting in a violation of a non-association condition.

Mr. Asaro deeply regrets his involvement in the criminal conduct to which he pleaded guilty and accepted responsibility. Mr. Asaro and his family have suffered tremendously from these events. He knows that he has to contend with the affect that his behavior has had and will continue to have upon his family. Attached hereto as Exhibit "A" are several letters from Mr. Asaro's family and friends attesting to his true character and personality.

**4.    Mr. Jerome  Asaro Is Unable To Pay A Fine**

Due to no fault of the defendant, his financial statement was only recently given to the Probation Department. The department will most likely cover the defendant's financial inability to pay a fine in an addendum to follow. However, based upon a review of his financial profile, it appears that Mr. Jerome Asaro is unable to pay a fine. Accordingly, it is respectfully requested that the Court not impose a fine.

**5.    Conclusion**

For all of the reasons discussed above, the Court should impose a a non-guidelines sentence below 63 months which after careful consideration of each of the factors present in 18 U.S.C. §3553, we submit is more than sufficient, but not greater than necessary, to promote the objectives of sentencing.

Thank you for your consideration.

Respectfully Submitted,

/s/
Lawrence M. Fisher

Cc:    Nicole Argentieri
       Assistant United States Attorney

# EXHIBIT "A"

**BRIDGET IAFRATE**

3 Spooner Street, Apt. 2, Floral Park, NY 11001
Phone: (516) 457-1188
Bja72982@yaxoo.com

Date: March 9, 2015

United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Honorable Judge Ross,

Good afternoon Judge.  I am writing this letter on behalf of my father, Mr. Jerome Asaro.   My name is Bridget Iafrate.  I am the eldest daughter of Mr. Asaro.  I have been lucky enough to be blessed with such a wonderful man who I have the privilege of calling my dad.  It is hard to put into a short letter what this man means to me and our family.  He is my father and my very best friend.  It is not often that I hear people refer to their fathers as their best friend, but in my case it is 100 % true. He is someone I look up too, look to for advice or encouragement, or even call just to catch up on the latest gossip with.  I am sure if he could he would tell you how many times I called him a day.  Whether it was to ask a question, say hi, or to talk about nonsense, I would speak to him a minimum of 3-5 times a day.  I am almost positive at times I was a little annoying, but if I was he never let me know it.  He always answered, or returned my calls if he was too busy to talk at work.  He was always there, no matter what time of day, I know I could always rely on him. I miss that.  I miss being able to call my best friend.  I miss the pointless conversations, the advice, or just being plain silly with him.  I miss it all.  My life has not been the same since he was taken away.  I feel as though a big part of me is missing.  I am married to my wonderful husband and have a beautiful daughter and also another precious little girl on the way.  I see so much of my Dad in my

husband in the way he is with my daughter.  It makes me so happy yet, so sad at the same time.  I want her to be able to have him around as her grandfather.  She deserves to know him and have the wonderful memories growing up with him as I did.  So many of us in this family depend on him.  My sister love and miss him dearly.  There will be so many things that will happen that he will miss out on being around for if he was given the maximum sentence.  My grandmother who adores him more then anything in this world is not in the best of health.  She has macular degeneration and is blind in one eye and almost blind in the other as well.  My father would wake up every Sunday morning and bring her breakfast and coffee and help her with errands around the house.  That always helped to lift her spirits and keep her smiling.  Since he has been gone we rarely see that smile.  She misses and needs her son now more then ever.  We all do.  My Dad is and has always been nothing but a kind, loving and most of all a hardworking man.  This is all we know him to be.  Please your honor, I beg that when it comes to his sentencing you please take all of this into consideration.  I assure you my father is truly sorry for his crime and the biggest punishment of all is to be away from his family who he loves dearly.

Thank you for taking the time to read this letter.  It is greatly appreciated.

Respectfully Yours,

Bridget Iafrate

Theresa Asaro
13205 83rd Street
Ozone Park, NY 11417

March 9, 2015

Dear Honorable Judge Ross,

My name is Theresa Asaro.  I am writing to you on behalf of my son, Jerome
Asaro.  It is with a heavy heart that I find myself sitting here with my
granddaughter asking her to type this letter.  Jerome is my only and eldest son.  He
truly is the light of my life.  From a very young age I always knew that he was
special.  He was always a respectful young boy and would always be willing to
give me a helping hand around the house.  I worked multiple jobs at some points in
time and always knew that I could depend on him to help me and help look after
his sisters.  I really could say he was the man of the house.  He excelled in school,
never wanting to miss a day, and always got good marks.  He also had always
worked hard.  I remember him having his first job at 14 years old at the local drug
store.  He also was a big saver.  I remember how proud I was of him when he was
able to buy his first car.  Its memories like these that always remind me of what a
remarkably responsible hard working young man he was and still is.  I am and
always will be proud to be his mother.

In the beginning of my letter I mentioned having to have my granddaughter type
this letter for me.  The reason for this is that I am blind.  I was diagnosed with
macular degeneration a while back.  I have no vision in one eye and only partial in
the other.  My health seems to be deteriorating as expected comes with age.  My
son has been a huge support system for me through the years as I have battled
many health issues.  He has been there to help me around the house whether it to
fix things, or drive in to shovel my snow.  He would come over often to visit and
see what I needed, also every Sunday morning we had our ritual of breakfast
together and morning coffee.  I do rely on him for help but most of all miss our
Sunday mornings together.  It's the quality time we spent together that means the
most to me.  I look forward to one day being able to have that again.

I ask that in sentencing my son you take into consideration how much he is loved
and needed in this family, not only by me but by all of us.  My daughters and

grandchildren miss him dearly and we anxiously await the day that we can have him home again.  In a nutshell he was always be a magnificent wonderful loving son and person and I wish for you to be able to see the good in him as well.

Thank you for your time,


Respectfully yours,

Theresa Asaro

Noreen Asaro
808 Palmetto Drive
Franklin Square, NY  11010

March 6, 2015

Dear Honorable Judge Ross

Thank you for taking the time to read my letter. I am writing to you on behalf of my brother Jerome Asaro. I am hoping the court will show empathy on him at his sentencing. My brother has always been there for my children and I. He recently spoke with my daughter about the importance of always being independent by doing well in school.  His guidance has definitely had an impact and helped mold them into the wonderful young women they have become today. I have been a single mother and my brother has always taken the time to include my children in with all his family activities and vacations. Our daughters were raised very close and are more like sisters than cousins. My brother has always been supportive and encouraging.

His daughters are really something to be proud of as a parent. They are all beautiful young responsible women who all look up to their dad. They have a special father daughter bond and love him very much. Not having him being here for just everyday life events has been an emotional hardship for all of them.

He just became a grandfather in 2013 to Ella and his oldest daughter Bridget is expecting another daughter July of this year. He will be greatly missed during these special times. His middle child Amanda is returning to nursing school his youngest Gia graduating from college and Bridget his eldest giving birth, are all the milestones that he will not be here to share with his family.

Our mother has lost her vision and all of the things that go with that and is also elderly. Not having her son around during this time is truly a heartbreaking situation for her.  Just sharing breakfast and being around to help her with chores is a real hardship. For our mom to visit him is a struggle as her health is compromised. I was counting on my brother being around to help care for our mom at this point of her life when she really needs him.

I hope the court can take these things into consideration on his sentencing day, and see the side of Jerome Asaro his  family sees, a kind  loving son, brother, uncle , father and grandfather.


Regards,
Noreen Asaro
Noreen Asaro

Dawn Edwards
6 Haney Court
Manorville, NY

March 8, 2015

United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Ross:

I find myself writing you this letter about my brother Jerome Asaro, who is about to be sentenced in your court. My brother Jerome is 5 years older then me and has a profound impact on my life. Growing up he was more like a father to me than a brother. He guided me and helped shape me into the women I am today. He has always been a person I can and could rely on to help me make the right decisions in life.

In our family I will always remember how much love and respect he had for our mom. He always helped her and worked hard around the house. He always checked up on me when I was out with my friends watching over me more like a daughter then a sister.

The impact of being incarnated has had a major affect on his daughters. They miss and love him so much. They need their dad to be there for them like he was for me. I worry that without his guidance for his children and the effect it will have on their lives.

I hope you can take this into consideration when sentencing my only brother today.

Thank you for your time

Respectfully Yours,

Dawn A. Edwards

**From the desk of**
**DinaMarie Asaro.**

Judge Alleyne Ross                        _____          March 8, 2015
US District Judge
EDNY
225 Cadman Plaza East
Brooklyn, N.Y.

Dear Judge Alleyne Ross,


I am writing this letter to you on behalf of my self my Children and my mom Sarah. My husband
Jerome Asaro has been incarcerated since last Jan. 2014. There are no words that can describe
what our lives have been like, so I will not take up too much of your time with it. The tremendous
amount of hardship and mental anguish my children and my mom and my self are suffering has
left me speechless.  However I will tell you a little bit about my husband Jerome. He is one of the
hardest workingmen I have ever met in my life. He works 6-7 days a week no matter what time
they give him He has devoted his life to his family we meant everything to him and he meant
every to us.  Jerome would come home every night for dinner and talk with his girls always
finding away to make time to be there for them. When my mom was hospitalized he took shifts
with me and stayed over with her just to make sure she new she was not alone. My husband was a
giving man he would take his shirt off his backs and give it to a homeless man. He is a kind and
gentle man. I have been Jerome for eight teen years and not once has he every raised his voice to
our children or me. He had never disrespected my girls or I.  Life with out him seems like no life
at all especially for our daughters. Our youngest daughter will be making her Confirmation,
Sweet 16 and High School Graduation and so many more events without him. If you punish him
you punish us all. It is a no win situation. I don't care what they say about my husband all I know
is he has never left my side in eighteen years unless you took him from me. I am a therapist who
works with special needs children and adults on horseback. Since this tragedy I can no longer
work with my handicapped children on horseback. Ever since my husband has been incarcerated,
I've had to give up my work and take on 2 to 3 other jobs. Judge Alleyne Ross I'm going to ask
you to please, please, please, think about what my children have had to endure and are continuing to
endure, like the bulling in school and so much more. Please try to find it in your heart to give my
husband the least amount of time as possible. I thank you for your time and for reading this, may
God bless you and keep you safe and secure in all your endeavors.



Sincerely,

DinaMarie Asaro

Tara Saylor
808 Palmetto Drive
Franklin Square, NY 11010

March 9, 2015

Dear Judge Ross,

I am writing in reference to Jerome Asaro, whom is being sentenced in your court.

I have known Mr. Asaro for almost 5 years as extended family, in the extent that his niece Darla Boccio is my partner, and I am best friends with 3 of his daughters - Bridget, Amanda, and Gia. I believe I am in a position to speak to Mr. Asaro's moral character, so I hope you will take this letter into account when making your decision.

Mr. Asaro is, in short, is a good person. He has always been kind and generous with others. He has always made me feel very much apart of the family, and welcome. He is warm and compassionate. We have gone on vacations as a family together, and he has always shown a loving, fatherly side to everyone that was around. He is always easy to talk to to, and always gives fatherly advice. He is they type of person that would give the shirt off his back for his family or friends. Mr. Asaro has a strong sense of duty and loyalty, which applies in his family. All 3 of his daughter's are true "daddy's girls" and have been raised with a strong sense of family, self respect and good morals leading them to accomplish great things for themselves this I know, they have acquired through Mr. Asaro's upbringing. Mr. Asaro also possesses a great deal of integrity, and constantly strives to make sure he is doing the right thing for his family, and those around him. I cannot say, I have ever seen an ill side of Mr. Asaro or have felt any sort of negativity towards him. He has only ever again, made me feel welcome and apart of his family. He's only ever spoken to me like I was one of his own, or treated me as such. When Mr. Asaro and I have communicated about every day things, for example me buying a new car, or getting a new job he has only ever shown happiness for me and been proud of my accomplishments, again as if I was his own daughter. He is always a positive reinforcement within our lives. He genuinely has made me feel like he only wants the best for his family, and those around him.

It must be difficult for you to make decisions like this when you don't actually know the person standing in front of you, so I hope you will look at my letter and the countless others you're receiving, and understand that Jerome is the kind of person around whom people rally. That has to say something, so please let that be a factor in your decision.

Thank you for your time,

Respectfully yours,

Tara M. Saylor

**Piero Iafrate**

3 Spooner Street, Apt. 2, Floral Park, NY 11001
Phone: (516) 250-1653
pieroiafrate@yahoo.com

Date: March 9, 2015

United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Honorable Judge Ross,

Good afternoon Your Honor. I would like to start by introducing myself. My Name is Piero Iafrate. I am the son-in-law of Mr. Jerome Asaro. I am married to his oldest daughter Bridget for almost 4 years now. I have known Mr. Asaro since 2002 when I began dating his daughter. I remember when I first starting dating my wife. When things got serious she was very excited for me to meet her family, especially her father who she always talked about all the time and was very close to. I was nervous as expected, but as soon as I shook his hand and introduced myself to him he completely put me at ease with his kind and welcoming personality by pulling me in for a hug. I always enjoyed spending time with my wife's family. You see my parents are immigrants from Rome, Italy. We do not have much family here, so for me to be a part of theirs was really something special. I always loved that Sunday was family day. We would spend Sundays at my father in laws house just about every week. He would cook a huge dinner and always have his door opened to all, whether it be his nieces or my wife's friends. He was quite the entertainer and cook and a great family man. I have always admired that about him and have always felt nothing but welcomed into his family from day one.

I can tell you first hand how hard the impact of his incarceration is on our family. My wife has taken this extremely hard, especially because she wishes our daughter Ella, 1, the opportunity to spend time and get to know her grandfather. We are now expecting our second daughter in early July and for him not to be here for her birth is also extremely devastating for us as well. My sister in laws miss him and love him dearly. We all do. My father in law in the 13 years of knowing him he has always been a kind, generous, hardworking man. I look up to him in many ways. His work ethic and love and loyalty towards his family are always something that I will admire.

We ask that you take all of this into consideration during his sentencing for to lose him for such a long period of time will be devastating to us all.  I thank you for your time in reading this letter.


Respectfully Yours,

Piero Iafrate

Karen Valenti
614 Hicksville Rd
Massapequa , NY 11758


To The Honorable Judge Ross,

My name is Mrs, Karen Valenti and I am writing this letter on behalf of Jerome Asaro. I have known Jerome for a better part of 25 years. In that time I have seen Jerome interact with his family and friends myself included enriching each life that he has touched.

Jerry is a good man he takes care of family and friends. Since the time I have known him he is a very hard worker and worked everyday to provide for his family.

Jerome has 5 beautiful daughters one of which he adopted. He also has a beautiful granddaughter and one on the way.

He has made a change in my life he has guided me through my ups & downs in my marriage. Jerry is the type of person that you can turn to for any reason and he will always have the right answer. He is a caring and loving person. He is trustworthy and dignified. He is a decent person at his core.

I just hope you will recognize the power you wield with regard to the future of Jerome and make a fair decision.


Thank you for your time,

*Karen Valenti*
Karen Valenti

If you have any questions please feel free to contact me at 516 799-1047

Maxie Boccio
808 Palmetto Drive
Franklin Square, NY 11010

March 9, 2015

Dear Your Honor,

I am writing you this letter regarding Jerome Asaro. Not only is Jerry my uncle, he is my godfather too. My uncle is someone I have always looked up to for his good spirit, hard work, and sense of humor.

I have always been close with his daughters, my first cousins, especially Gia my best friend. I have so much respect for Jerry because I've witnessed the strong love and bond he has with his daughters. He has always cared for me like one of his own. Jerry motivates me by reminding me often that my hard work at school and work will pay off.

Being so close with his daughters, I have noticed their pain since their father has been away. This traumatic event has been heartbreaking for our family. The impact of Jerry not being home will influence his grandchildren negativity also. My uncle has always been a selfless person with a big heart.

I hope that you take all of this into consideration when sentencing my uncle.

Thank you,
Maxie Boccio

March 9th 2015

United States District Court
225 Cadman plaza east
Brooklyn, New York 11201

       Re: Jerome Asaro

Dear Your Honor:

My name is Susan Asaro, I am writing this letter on behalf of Jerome Asaro. I know Jerome Asaro for thirty six years since nineteen seventy nine. I married Jerome Asaro in November of nineteen eighty one. I have three smart, beautiful daughters with him, Bridget, Amanda, and Gia. We had a very good marriage for sixteen years and divorced, nothing to do with him, it was me. Just for the record Jerome Asaro was a devoted, wonder husband and father, and to his family and friends he was and is the best. He is a family man in plain english. He is a hard worker and a loving man, he was when I was married to him and always continued to be of the same nature. There is not a one bad word I have to say about him, he is the perfect man in my eyes. Being divorced and a single from him I could say this, not many women could say that about their ex-husbands. I know because I could never find anyone that came close to what kind of man he is. I was foolish and have paid for it in a big way. If I could turn my life around I would have one wish that we would be together again. He is truly a great family man and is an asset to society. Therefore, I ask for solitude and compassion when sentencing my ex-husband the father of my children, and I hope you can take this into consideration.

Thank you for your time.

Very truly yours,

Susan Asaro

March 9, 2015

United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

       Re: Jerome Asaro

Dear Your Honor:

My name is Amanda Asaro, and I am writing this letter on behalf of my father Jerome Asaro. I considered myself lucky to have known such a great man my entire life. My father is the patriarch of this family and he really holds us all together. We truly are a tight knit family and without my father around our family really feel's empty. I would consider my father to be one of the most loving, caring, loyal, hardworking, respectable men I know. My father's hard work and dedication has always been something that I admire most about him. My father is the best role model, and he has always taught us to be the best versions of ourselves. My father always goes above and beyond for my sisters and I. He truly is the most amazing father, and grandfather.

My father's incarceration has been extremely hard on my sisters and I. It is very hard to go from the tight knit family that would spend most of our time together to being separated. To lose such an important piece of our family for such a long period of time would be absolutely devastating for my sisters and me. There is so much that he is already going to miss such as college graduations to a birth of a new grandchild. Therefore I ask for you to please take my sisters and me into consideration when you are sentencing my father. It would be greatly appreciated.

Thank you for your time.

Respectfully yours,

*Amanda Asaro*

Amanda Asaro

Gia Asaro
938 Chestnut Street
Franklin Square, New York 11010
March 9, 2014

Dear Your Honor,

I am writing you this letter on behalf of my father Jerome Asaro. Along with being my father, he is also the father to four other girls ranging from fourteen to thirty-three. Not only does Jerome have five daughters but, he also has a granddaughter who is nearly two years old and he has already missed a year and a half out of her life. My older sister is expecting again and i hope that my father will not miss much of both of their lives. For the past twenty-four years, my father has always been a hardworking, supportive, sympathetic, generous, kind and motivated person. My father has always been an inspiration for me and has always motivated me to try harder. I am happy that I inherited a lot of his qualities, especially his intelligence and work ethic. He always went to work and rarely took a day off even if he was ill. My father is responsible for managing the mortgage and others bills. I don't want to see my younger sister have to move out of the house that she grew up in because my step-mother can't afford to pay the bills. Being a child of divorce, I know how hard it is growing up not living with a father in the house. I don't want my sister to miss out on time with him.

This semester I am graduating from college and I know my father would want nothing more than to be there. Although I know that it would not be possible, I don't want him to miss my wedding if it were to happen in the next five to six years. Please if you could take into consideration when sentencing my father the five daughters and two granddaughters that he has. I hope that you realize the immense power you have over my father's future and sentence him fairly. I know that I am asking a lot but, I love my father so much and he is a very important person in my life. I can't imagine having to spend holidays or birthdays without him for a long time. I can't imagine him not being there for major life changing events.

Sincerely,

Gia Asaro

Gia Asaro

Darla Boccio
808 Palmetto Drive
Franklin Square, NY 11010

March 8, 2015

United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Ross:

I am writing this letter with regard to my Uncle, Jerome Asaro. I have been lucky enough
to have known him my entire life. Jerome is my mother's only brother. He has always
been such an important part of our family. His daughters (my first cousin's) are not only
my cousin's, but I would consider them my sisters. Our family has always been very tight
knit, which we can thank my Uncle for keeping us that way. He always told us to always
stay together and be there for each other.

I would consider my Uncle to be one of the most hard working, loyal, respectable men I
have ever known. My mother has raised my sister and I by herself and has constantly
struggled to do so. My Uncle Jerry has always been a dependable support system for us.
He has always been a positive role model in my life. His hard work, dedication and
ambition will always be something that I have admired about him. He is above and
beyond the best father to his daughters. He has always been involved in all of their lives,
and constantly letting them know that hard work pays off and to always do your best in
everything that they do.

My Uncle's incarceration has extremely affected our family, especially his daughters. The
glue to the family is suddenly missing. At all different stages in their lives and with new
grandchildren on the way, this has been nothing less then tragic for all of us. Therefore, I
ask for your solitude and compassion when sentencing my Uncle, and I hope you can
take this into consideration. Thank you.

Respectfully Yours,

Darla Boccio

Alisa Dutkiewicz
333 East 5th Street, D4
New York, New York 10003

February 12, 2015

Dear Honorable Judge Ross:

Greetings. I hope this missive finds you well. My name is Alisa Dutkiewicz. I am writing this letter to ask for leniency in the sentencing of my cousin Jerome Asaro 04641-748. Jerry is my first cousin-- the son of my mother's sister. I have known Jerry my entire life and have known him to be an unfailingly loving husband, son, cousin and father as well as a good and upstanding friend, neighbor and man.

Quickly about myself: for the past 18 years, I have been a NYC high school social studies teacher working with under-privileged and at-risk youth. In this capacity, I have learned a great deal about what motivates some people to behave well above expectations and what causes some people to struggle with the choices they make. This role has blessed me with the opportunity to see many people who seem eternally destined for the wrong path turn their lives around completely when given a second opportunity. I am certain the same would be true for Jerry.

If you don't mind, I'd like to get a little more specific about my cousin, Jerry. Jerry is one of very few men in my female-dominated family. He is the father of five girls; Bridget, Amanda, Gia, Brittany, and Sarah. His daughters are his number one priority and he means the world to them and would literally do anything to further their well-being. Despite working long hours and having his own family, Jerry has always supported me. When I was first out on my own, I could count on him to come over and help me with any problem I had—personal, emotional, or practical. Jerry is also a devoted son to his mother, Terry.

I am proud that over the past year, Jerry has been a model prisoner and accepted responsibility for his actions. I am grateful that he has chosen not to put his family through the expense and hardship of a trial. My cousin, Jerry Asaro is so much more than the list of charges presented to the court. I want the court to know that Jerry has a family that loves him and that will continue to suffer greatly by his continued incarceration. I am certain that he has seen the error of his ways and learned from them immensely. I have every belief that moving forward he will be an exemplary citizen and devoted family man. Thank you, honorable judge for taking the time to read my request for leniency. I have faith that the judicial system will follow the correct course of action.

Sincerely:

*Alisa Dutkiewicz*

Alisa Dutkiewicz

Tara Dutkiewicz
7210 112th Street, Apt 1G
Forest Hills, NY 11375

February 11, 2015

Dear Honorable Judge,

I am writing on behalf of Jerome Asaro, #04641-748. I have known Jerry my entire life. He is my first cousin on my mother's side and godfather. Jerry has always guided me to make wise decisions throughout my life. He became a mentor to me after my parents retired down south. It's ironic that the man I have always admired finds himself in front of you in this situation. Despite the charges, I know that Jerry is a man of great integrity and strong family values. He keeps a positive attitude along this rough ride. He tells us he's fine and not to worry. I think this exemplifies his strong character and willingness to make things right.

Jerry is a wonderful, kind man, missed by his family and friends. I beg you for leniency when sentencing him. I would love for my son (2 years) and new baby on the way to know their Uncle Jerry.

Respectfully,

Tara Dutkiewicz

March 8, 2015

Tanya Moran
1030 Van Buren Ave.
Franklin Square, NY 11010

United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge Ross:

I am writing this letter on behalf of Mr. Jerome Asaro. I have had the pleasure of knowing him for 28 years and I consider him to be a second father to me. I have been best friends with his daughter Bridget Iafrate (Asaro) since we are 5 years old and I can tell you that her father is everything to her. She is the true definition of a "daddy's girl". They have a special bond that I have always admired. I have only ever known him to be kind, generous, loving, gentle, caring, genuine and a GREAT father, husband and grandfather. He is the type of person that would give you the shirt off his back. I have nothing but the utmost love and respect for him.

I have accompanied him on numerous family vacations and outings throughout the years in which some of the best memories of my life were made. He has always been a positive role model in my life helping me to focus on school and stay out of trouble in my younger years. His children have always been his main priority and he has always treated me like one of them. Family is everything to him. I always loved going to his house for Sunday dinner when I was younger and even more with my own family where he would cook up a great meal for us. I look forward to those days again with our growing families.

I ask for your leniency & compassion when sentencing Mr. Asaro. I can tell you the impact of him being away is devastating for his daughters, granddaughter, family and myself. I know Mr. Asaro knows that as well, and that is probably worse than any sentence he could get. Thank you.

Sincerely,

Tanya Moran

March 10, 2015

Dear Judge Ross,

      My name is Bliss Trucchio and I am writing this letter on behalf of Jerome Asaro.  I have known Mr. Asaro my whole life, as he was married to my aunt, Susan.  Although they have been divorced for some time now, I still consider Jerome to be my uncle.  We still maintain a friendly and respectful relationship.   Mr. Asaro has always been a family man, crazy about his five daughters and now recently his granddaughter.  With constant involvement in his daughter's lives, he attended all their special events as well and always remained an active part in each of their hectic schedules.  Being a young woman, I know the importance of what it means to have a fatherly figure in one's life.  Sadly, my father is incarcerated as well, and I know the void that all of these young ladies are feeling.  There is no love and bond greater than that of a father and his daughter and for this I beg that there be leniency for Jerome Asaro, so that he may remain an active part of his families' lives.  Thank you very much for your time and consideration.

Sincerely,

*Bliss Trucchio*

Bliss Trucchio

March 10, 2015


United States District Court
225 Cadman Plaza East
Brooklyn New York 11201


Re: Jerome Asaro


Dear Your Honor:

I am writing this letter in regards to Jerome Asaro.  I Nancy Pirone have known Jerome Asaro for thirty-seven years.  He was married to my twin sister Susan Asaro, and has three beautiful now adult children, one who is pregnant again with the second granddaughter.  There are so many great qualities about Jerome Asaro, he is a fabulous father, grandfather, and was an amazing husband to my sister.  When all together as a family he shined through with a great personality, always a happy man and also would always have many laughs.  My sister has been divorced from him for many years, and I still consider him my brother in-law.  His daughters are amazing and they adore there father.  What is not to be adored, because he is and was a great dad.  Jerome is a very loving, caring man and it truly shows when he is around his family.  I only wish the best for him because he definitely fits the profile of an outstanding man, and family man.  I pray that he comes home to all the ones that love him, because not only his family but his friend can agree he is a man with great intention and is a great assets to everyone that knows him.  Therefore I ask for your solitude and compassion when sentencing Jerome Asaro, and I hope you can take this into consideration.  Thank You


Sincerely,

Nancy Pirone
Nancy Pirone